# SIXTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 6D2023-3924
Lower Tribunal No. 2020-DR-6618

_____

KRISTINA HARRIS,

Appellant,

v.

JERMAINE HARRIS,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Michael Deen, Judge.

January 9, 2026

PER CURIAM.

Based upon the arguments made and the evidence presented, we find no error in the trial court's final judgment.

AFFIRMED.

NARDELLA and BROWNLEE, JJ., concur.
SMITH, J., dissents, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

_____

SMITH, J., dissenting, with opinion.

Kristina Harris argues error by the trial court in failing to equitably distribute as a marital asset Jermaine Harris's military retirement pension, ten years of which accrued during the parties' marriage. She also alleges error in the trial court's failure to order continued maintenance of the Survivor Benefit Plan ("SBP") related to the military pension. Because the military pension that accrued during the marriage is a marital asset, I would find the trial court's failure to equitably distribute the same is reversible error.

## Factual Background

The parties married on June 10, 2010, while the former husband was actively serving in the United States military. They met in Germany where the former wife was a citizen at the time. In support of her then husband's career, the former wife moved to the U.S., which required her to leave her job. This resulted in the loss of any potential pension to which she would have been entitled had she remained in her home country.

The former wife petitioned for dissolution of the marriage on July 1, 2020. During the marriage, the former husband served on active duty in the U.S. Army. After the petition's filing date, but before the 2023 trial date, the former husband retired from the military and began receiving his military pension of $4,400 per

2

month.[1] Up to the point of trial, he had been paying a monthly amount to maintain the SBP for the former wife—a benefit that allows the former wife to continue to receive the former husband's military retirement in the event he predeceases her. Despite this evidence, the trial court's initial final judgment did not equitably distribute the marital portion of the pension. The former wife pointed this out in a timely motion for reconsideration.[2] The trial court ultimately denied relief, however, finding a "lack of competent, substantial evidence regarding the value and nature of the military retirement benefits, and in accordance with precedent such as *Pierre v. Pierre*, 185 So. 3d 1264 (4th DCA 2016)."[3]

Standard of Review

"This Court reviews a determination of equitable distribution in a dissolution of marriage action for an abuse of discretion." *MacPherson v. MacPherson*, 387 So. 3d 418, 419 (Fla. 6th DCA 2024) (quoting *Gayer v. Nicita*, 368 So. 3d 533, 535 (Fla. 6th DCA 2023)). "However, the distribution of marital assets and liabilities must be

---

[1] In addition to the military retirement pension, the former husband was also receiving approximately $4,000 per month in military disability income. The former wife had a net monthly income of $2,600 per month.

[2] The trial court required the former wife to file a second motion for rehearing to include a copy of and references to the trial transcript.

[3] Although *Pierre* is not on point to the present analysis, I would note that in *Pierre*, the trial court was reversed for failing to make specific written findings regarding valuation of the marital assets and liabilities. *Id.* at 1265. *Pierre* does not stand for the proposition of empowering a trial court to refuse to distribute known marital assets due to lack of sufficient evidence as to valuation.

supported by factual findings in the judgment or order based on competent substantial evidence." *Id.*

Analysis

The marital portion of a military pension is marital property, and thus subject to equitable distribution. *See* §§ 61.075(6)(a)1.e. and 61.076(1), Fla. Stat. (2024); *see also Diffenderfer v. Diffenderfer*, 491 So. 2d 265, 270 (Fla. 1986) ("[W]e hold that a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property."). Neither party appears to dispute this, and the trial court understood this to be the state of the law; yet the court refused to distribute the marital portion based on its finding of a lack of competent, substantial evidence as to the exact value of the pension. This was error.

Florida law posits two overarching methods for valuing the marital portion of a military pension for purposes of equitable distribution: immediate offset and deferred distribution. *Trant v. Trant*, 545 So. 2d 428, 429 (Fla. 2d DCA 1989). The methodologies discussed in *Trant* are derived from the Florida Supreme Court's holding in *Diffenderfer*, 491 So. 2d at 269. *Trant* has been cited with approval by the Florida Supreme Court and all district courts over the past three decades without any significant criticism. *See Boyett v. Boyett*, 703 So. 2d 451, 453 (Fla. 1997); *Giovanini v. Giovanini*, 894 So. 2d 275, 275 (Fla. 1st DCA 2004); *Reynolds v. Reynolds*, 615 So. 2d 243, 244 (Fla. 3d DCA 1993); *Lovelass v. Hutchinson*, 250 So.

4

3d 701, 704 (Fla. 4th DCA 2018); *Chehab v. Hamilton-Chehab*, 45 So. 3d 533, 535 (Fla. 5th DCA 2010).

Immediate offset involves calculating the present value of the marital portion of the pension and offsetting one spouse's share of that value as part of the equitable distribution calculation. *Trant*, 545 So. 2d at 429. This method typically requires expert testimony, especially in calculating the present value of the future stream of pension payments. *Id.* While the immediate offset approach has the advantage of allowing parties to avoid future interactions involving the pension, it requires sufficient total marital assets from which to offset a particular spouse's marital portion. *Id.* Even a cursory review of the assets available to the Harrises indicates immediate offset is not a viable option for this reason.

Deferred distribution, on the other hand, is a much simpler calculation. *Id.* In *DeLoach v. DeLoach*, 590 So. 2d 956 (Fla. 1st DCA 1991), the First District set out several possible scenarios for calculating the deferred distribution amount for the military member's spouse. Because the former husband in our case retired from service before the dissolution of the marriage, the calculation can be expressed as follows: (number of years of marriage in military) ÷ (total years in military) x (% of military spouse's share)[4] = (percentage of military retirement). *Id.* at 965; *see also*

---

[4] Neither side has raised in this appeal a request for unequal distribution relative to the military retirement, so presumably the "'% of military spouse's share" here would be fifty percent. *See* § 61.075(1), Fla. Stat. (2024) ("[T]he court must begin with the premise that the distribution will be equal[.]").

*Haydu v. Haydu*, 591 So. 2d 655, 657 & n.3 (Fla. 1st DCA 1991). Because the parties here were married for over ten years of the military member's creditable service time, section 61.076(2), Florida Statutes (2024), also applies:

(2) If the parties were married for at least 10 years, during which at least one of the parties who was a member of the federal uniformed services performed at least 10 years of creditable service, and if the division of marital property includes a division of uniformed services retired or retainer pay, the *final judgment shall include the following*:

(a) Sufficient information to identify the member of the uniformed services;

(b) Certification that the Servicemembers Civil Relief Act was observed if the decree was issued while the member was on active duty and was not represented in court;

(c) *A specification of the amount* of retired or retainer pay to be distributed pursuant to the order, *expressed in dollars or as a percentage* of the disposable retired or retainer pay.

*Id.* (emphasis added). As stated in section 61.076(2)(c), the equitable distribution can be reflected in the final judgment as either a percentage of the disposable retired pay or as a specific dollar amount. If the parties desire to have a monthly dollar amount in the final judgment, then a potential calculation could be as follows: (percentage of military retirement) x (military member's monthly retirement benefit) = (military spouse's monthly portion). *See Haydu*, 591 So. 2d at 657 & n.3.

Although the trial court did not explain its finding of a lack of "competent, substantial evidence regarding the value and nature of the [former husband's] military retirement benefits," one might presume the court was expecting expert testimony of some sort—and indeed, expert testimony often is required with the

6

immediate offset valuation method.  However, expert testimony is not a *sine qua non* under the deferred distribution method, which can require only a minimal amount of information to calculate the applicable percentage or monthly payment amount.

The trial court's error here appears similar in part to that of the lower court in *Cupo v. Cupo*, 352 So. 3d 888 (Fla. 4th DCA 2022).  There, the trial court failed to distribute to the military spouse her portion of the former husband's military retirement.  *Id.* at 889.  Though this error was brought to the court's attention via a motion for rehearing, it refused to distribute any portion of the retirement to the military spouse on the ground of insufficient evidence.  *Id.* at 889-90.  In reversing and remanding, the Fourth District first noted that the parties had been married for at least ten years of the husband's creditable military service.  *Id.* at 889.  It then held the trial court erred by failing to include in its final judgment either a monthly amount or a percentage of retirement pay to be equitably distributed to the wife as required by section 61.076(2):

> The statute makes clear that a military pension must be included in any equitable division, and the pension may be valued based upon a percentage of the retired pay.  *Thus, even if the court is not presented with the pension's value in dollars, the court must still include the pension, expressed as a percentage, in the division of the marital assets.*  The court was obligated to divide the pension.

*Id.* at 890 (emphasis added).  To be clear, lack of sufficient evidence was not deemed to be an appropriate basis of denial of equitable distribution of the marital portion of the military retirement.  *Id.*  ("The court was *obligated* to divide the pension.")

7

(emphasis added); *see also Cancel v. Cancel*, 399 So. 3d 371, 372 (Fla. 2d DCA 2024) (lower court refused to equitably distribute husband's pension in a final judgment because "the parties had presented no evidence of its present value"; reversed and remanded for the trial court to calculate and distribute the pension). As in *Cupo*, it was error for the trial court here to offhandedly dismiss the former wife's request for her marital share of the military retirement due to a lack of evidence regarding valuation of the same.

In arguing she should be awarded fifty percent of the military retirement pension, the former wife cites *Jahnke v. Jahnke*, 804 So. 2d 513 (Fla. 3d DCA 2001). In *Jahnke*, the husband asserted the trial court erred in awarding half of his retirement plans (which included a pension and retirement savings plan) to the wife. 804 So. 2d at 516-17. He contended that certain amounts of the plans were based on non-marital contributions, and, therefore, it was error to award fifty percent to the wife because that meant the lower court was treating all the retirement plans as marital. *Id.* In rejecting the husband's argument and affirming the lower court, the Third District held that "the burden of proof is on the spouse who wishes to show that an asset or liability acquired during the marriage is not … marital." *Id.* at 517 (quoting *Gladstone v. Gladstone*, 733 So. 2d 1090 (Fla. 4th DCA 1999)). The court affirmed the lower court's award of fifty percent to the wife, stating "[a]bsent any proof of premarital contributions to the plan, the trial court can treat the whole amount as a

marital asset." *Id.* (quoting *Reyher v. Reyher*, 495 So. 2d 797, 800 (Fla. 2d DCA 1986)).

Except for the Fifth District, all districts have followed the approach outlined in *Jahnke* above. *See Martin v. Martin*, 276 So. 3d 393, 398 (Fla. 1st DCA 2019) ("The Second, Third, and Fourth Districts have held that '[t]he burden is on the pensioner "to prove whether some portion of [the] pension benefits accrued prior to marriage and therefore should not be included as a marital asset."'") (citations omitted); *Reyher v. Reyher*, 495 So. 2d 797, 800 (Fla. 2d DCA 1986) ("In order to exclude any premarital contributions, the 'owner' must prove the value of the premarital contributions (and appreciation of that value, if any)."); *Childers v. Childers*, 640 So. 2d 108, 109 (Fla. 4th DCA 1994) ("On remand, the burden will be upon the appellee-husband to prove whether some portion of his pension benefits accrued prior to marriage and therefore should not be included as a marital asset."). *Contra Zaborowski v. Zaborowski*, 547 So. 2d 1296, 1297 (Fla. 5th DCA 1989) ("We deem it the burden of the claiming spouse, in this case the former wife, to prove what she claims, i.e., an interest in the pension plan and its value, in keeping with the recognized rule of law that he (or she) who claims must prove.").

In *Childers*, the Fourth District convincingly explains why the Fifth District's approach in *Zaborowski* of putting the burden on the non-owning spouse to prove the value of the owner-spouse's non-marital contributions should be rejected:

> This raises the question of which party has the burden to show how much of the plan should be included in the marital estate. The second

9

district court of appeal has held that the burden is on the person with the pension. *Reyher v. Reyher,* 495 So.2d 797 (Fla. 2d DCA 1986). The fifth district has placed the burden on the non-pensioned spouse. *Zaborowski v. Zaborowski,* 547 So.2d 1296 (Fla. 5th DCA 1989). In the interest of judicial economy we prefer the approach of the *Reyher* court. The person with the pension obviously has access to the facts and figures necessary for the trial court to make a determination of the value of the benefits and to fit that determination into the plan of equitable distribution. The non-pensioned person could develop those facts and figures only through the discovery process which might become both expensive and time-consuming.

640 So. 2d at 109. It seems more logical to place the burden on the party who presently owns the pension to prove their non-marital contributions as that party would have direct access to the plan itself to obtain data regarding amounts and timing of contributions.

The concerns of it being more "time-consuming" and "expensive," as expressed in *Childers*, to put the burden of proof on the non-owning party are brought to bear in this case. Here, the former husband defied court orders to sign documents releasing his military records and was ultimately held in contempt and sentenced to ninety days in jail for his failure to do so. This is illustrative of the extra time and expense, and at times near impossibility, of placing the burden on the non-owning spouse to obtain records of a pension fund of the other party. By following the First, Second, Third, and Fourth Districts, the former husband's contemptuous behavior here[5] would be met with timely, decisive action by the trial

---

[5] Another example of the former husband's egregious misconduct of disobedience to direct court orders included selling the parties' Volvo to a third

10

court of simply awarding fifty percent of the entire military pension to the former wife.

Following *Jahnke* and several of our sister districts, the former wife in this case should have been awarded 50% of the former husband's military retirement pension as he did not present any evidence in the lower court as to his non-marital contributions to the pension (i.e. he never testified how many years he served in the military, if any, prior to the parties' marriage). I would note that most appellate courts finding error in circumstances such as this have opted to remand for recalculation rather than attempt to calculate the proper award from the perspective of the appellate bench. *See Cupo*, 352 So. 3d at 890 ("As the wife was not married to the husband for the entirety of the husband's military service, she may not be entitled to a full fifty percent of the military pension, which she claims. . . . We thus reverse and remand for further proceedings in accordance with this opinion."); *Childers*, 640 So. 2d at 109 ("On remand, the burden will be upon the appellee-husband to prove whether some portion of his pension benefits accrued prior to marriage and therefore should not be included as a marital asset."); *Zaborowski*, 547 So. 2d at 1297-98 ("We therefore reverse . . . and remand the cause to the trial court for further proceedings which may include the taking of additional testimony from the parties as to the premarital and postmarital values of the pension fund in

---

party, rather than returning it to the former wife, and then sending the former wife a boxed toy car of the same model.

accordance with the principles set forth in this opinion[.]"); *Reyher*, 495 So. 2d at 800 ("The procedure set out above will allow the trial court to equitably distribute pension plans as marital property without awarding the non-pensioned party a windfall of half the premarital value of the plans. . . . Reversed and remanded with instructions."). In line with our sister districts, remand with instruction for the lower court to calculate the former wife's marital share would be the more proper course in the present case.

Conclusion

Here, I would find the trial court erred by failing to include in its final judgment the portion of the former wife's share of the military retirement, expressed as either a percentage or monthly dollar amount. The judgment also failed to address whether the former husband will be required to maintain the SBP; while a matter within the trial court's discretion, that should have been addressed in the final judgment and one that could be addressed on remand. *Heldmyer v. Heldmyer*, 555 So. 2d 1324, 1325 (Fla. 5th DCA 1990) ("Congress amended 10 U.S.C., section 1450(f)(4) . . . to allow a trial court (in its discretion) to order a spouse to maintain an annuity for a former spouse under the Survivor Benefit Plan."). Accordingly, I would reverse and remand for the trial court to calculate the appropriate percentage

or dollar amount reflecting the former wife's marital portion of the military retirement and to address the matter of whether the SBP should be maintained.[6]

For the reasons expressed above, I respectfully dissent.

_____

Andrew J. Chmelir, of Jacobson, Chmelir & Ferwerda, Winter Springs, for Appellant.

Jermaine Harris, Orlando, pro se.

---

[6] Because the trial court attributed all the pension to the former husband as income, upon remand, equitably distributing the retirement pay would require a concomitant revision of the alimony and child support award.