IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

BRENDA MARIE MILLS,

      Appellant,

v.                                        Case No.  5D15-200

BARRY ANTHONY MILLS,

      Appellee.

_____/

Opinion filed April 29, 2016

Appeal from the Circuit Court
for Brevard County,
Morgan Laur Reinman, Judge.

Amy D. Shield and Roger Levine, of Amy D.
Shield, P.A., Boca Raton, for Appellant.

Philip Fougerousse, of Law Office of Philip
Fougerousse, Merritt Island, for Appellee.


PER CURIAM.

      Brenda Marie Mills ("Former Wife") appeals the Amended Final Judgment dissolving her thirty-seven-year marriage to Barry Anthony Mills (Former Husband). She raises a number of issues on appeal, however only one merits discussion: namely, the trial court's failure to classify $100,000 of the $245,475 loss incurred in the Florida State Bank investment as a nonmarital liability.

Former Husband sat on the Board of Directors of Florida State Bank, which was a startup bank created in 2007. All board members were required to make financial investments in the bank. Former Wife was aware that Former Husband was involved in the bank startup deal for Florida State Bank, but she was not aware of the size of the investment.

Former Husband testified that he had an obligation to fund the startup, but he did not have sufficient funds available. To acquire the funds, Former Husband, without Former Wife's knowledge, took out a secured home equity loan from Indymac against the marital home, in the amount of $100,000. Former Wife testified that Former Husband forged her signature on the loan documents. Former Husband admitted that he signed Former Wife's name on the loan application, because he figured she would not agree to the investment, and he had an obligation to cover. He invested the loan funds and other funds in Florida State Bank. Former Wife learned of the loan when the lender called and threatened to take the marital home if the loan was not promptly repaid. Thereafter, the loan was paid off with funds from Former Husband's marital retirement accounts.

Ultimately, the couple lost almost all of their investment when Florida State Bank did not receive a state charter. This resulted in a net loss of $245,475.[1]

Former Wife argued that the net $245,475 loss incurred from the Florida State Bank investment should have been assigned as the nonmarital liability of Former Husband in the equitable distribution schedule, because Former Husband forged her

[1] Former Husband recovered only $20,525 of the money he invested in the bank.

signature on the loan application for the $100,000 home equity loan secured by the marital home. The trial court disagreed, concluding:

> During the course of the marriage, it is evident that the Respondent/Husband made numerous investments on behalf of the parties which thereafter were profitable and are now being subject to equitable distribution to the benefit of the Petitioner/Wife. Since the Petitioner/Wife will share in the production of wealth from the Respondent/Husband's financial decisions, it would not be equitable to punish the Respondent/Husband for an investment which was not profitable. The Petitioner/Wife should share in that as well. Thus, this Court takes no action regarding the Petitioner/Wife's request for relief regarding said issue and distributes the loss carried forward equally to the parties.

This conclusion constitutes error.

"[E]xpenditures and investment decisions which do not rise to the level of misconduct will not support an unequal distribution of marital assets." Branch v. Branch, 775 So. 2d 406, 407 (Fla. 1st DCA 2000) (citing Murray v. Murray, 636 So. 2d 536, 538 (Fla. 1st DCA 1994)). However, liabilities incurred by forgery or unauthorized signature of the other spouse's name are nonmarital liabilities and the sole burden of the spouse committing the fraud unless the liability was subsequently ratified by the other spouse. § 61.075(6)(b)5., Fla. Stat. (2014).[2]

---

[2] Section 61.075, provides, in pertinent part:

> (6)(b) "Nonmarital assets and liabilities" include:
>
> . . . .
>
> 5. Any liability incurred by forgery or unauthorized signature of one spouse signing the name of the other spouse. Any such liability shall be a nonmarital liability only of the party having committed the forgery or having affixed the unauthorized signature. In determining an award of attorney's fees and costs pursuant to s. 61.16, the court may

3

Former Husband admitted that he forged Former Wife's signature on the loan because he did not think she would agree to sign it herself. And, there was no evidence to suggest Former Wife ratified the loan. Thus, the loan was a nonmarital liability of Former Husband. Nevertheless, the loan was paid off using marital funds from Former Husband's retirement accounts. Because the $100,000 principal from the loan was within the $245,475 in losses incurred in the Florida State Bank investment, the trial court should have classified $100,000 of the $245,475 loss as the nonmarital liability of Former Husband. See id. Failing to do so is reversible error. See Prest v. Tracy, 749 So. 2d 538, 539 (Fla. 2d DCA 2000) ("A final judgment which purports to equitably distribute the parties' marital assets but which fails to comply with the statutory requirements . . . requires reversal." (citing Staton v. Staton, 710 So. 2d 744, 745 (Fla. 2d DCA 1998))).

Accordingly, we reverse that portion of the final judgment distributing the losses on the Florida State Bank investment equally and remand for the purpose of allocating $100,000 of the losses as a nonmarital liability of Former Husband. In all other respects, we affirm.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

TORPY, BERGER and WALLIS, JJ., concur.

---

consider forgery or an unauthorized signature by a party and may make a separate award for attorney's fees and costs occasioned by the forgery or unauthorized signature. This subparagraph does not apply to any forged or unauthorized signature that was subsequently ratified by the other spouse.